IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| RAUL VILLEGAS GARZA, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | NO. 4:24-CV-571-O |
| § | |
| DOCTOR FNU BISHOP, § | |
| ET AL., § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

Came on for consideration the motion of Defendant Dr. Bishop to dismiss. The Court, having considered the motion to which Plaintiff, Raul Villegas Garza, has failed to respond,[1] the record, and applicable authorities, concludes that the motion must be **GRANTED**.

**I.   PLAINTIFF'S CLAIMS**

Plaintiff filed a complaint naming Dr. Bishop, Nurse Rachel LNU, and Nurse Zeorgetta as defendants. He asserts two violations of his right to medical care while he was confined at the Hood County Jail from February 16 until April 2, 2024. He alleges: Defendants were aware of his need to use a CPAP machine at all times. On February 20, 2024, he awoke at about 7:30 a.m. and discovered that his CPAP machine had quit running. An officer told him that Dr. Bishop had problems with another inmate and took it out on Plaintiff. On February 24, 2024, he woke up at 8:30 a.m. and was light-headed due to the CPAP machine having been unplugged from the outside of his cell. He got up to walk to the toilet and his shower shoe got caught on the lip of the drain,

---

[1] Plaintiff has filed several motions for appointment of counsel, alleging only that he needs help in obtaining evidence to support his claims. At this point, however, the Court is considering only the pleadings and whether Plaintiff has alleged sufficient facts to state a claim. The facts are within his personal knowledge and he does not need, nor has he sought, an attorney to articulate them for him. Nothing prevented Plaintiff from timely responding to the motion.

causing him to fall. When he inquired the next day, Defendant Zeorgetta told him she had not yet informed Dr. Bishop. The following day, she told him that Dr. Bishop would not give him any pain medication until he examined Plaintiff and that Dr. Bishop would not come until two weeks later. On March 8, 2024, Plaintiff was taken for an x-ray. Later, Dr. Bishop told Plaintiff that the x-ray showed it was arthritis. When Plaintiff was returned to the Beto Unit, further x-rays showed that Plaintiff had broken his collar bone. Plaintiff seeks to recover $575,000 as monetary damage, punitive damages, court costs, and attorney's fees. ECF No. 1.

## II.    APPLICABLE LEGAL STANDARDS

### A.    Pleading

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. *Twombly*, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must

allow the court to infer that the plaintiff's right to relief is plausible. *Iqbal*, 556 U.S. at 678. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. *Id.* In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

In considering a motion to dismiss for failure to state a claim, the court considers the complaint and documents attached to the complaint. *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021). "In case of a conflict between the allegations in a complaint and the exhibits attached to the complaint, the exhibits control." *Stockwell v. Kanan*, 442 F. App'x 911, 913 (5th Cir. 2011). The court may consider documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). The court may also take judicial notice of matters of public record. *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986); *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

### B. Qualified Immunity

Qualified immunity insulates a government official[2] from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a right to be "clearly established," that right's contours must be "sufficiently clear that a reasonable

---

[2] A doctor acting under contract with the county is a state actor for purposes of qualified immunity. *Bishop v. Karney*, 408 F. App'x 846, 848 (5th Cir. 2011) (citing *West v. Atkins*, 487 U.S. 42 (1988)).

official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Anderson*, 483 U.S. at 639-40. In *Harlow*, the Supreme Court explained that a key question is "whether that law was clearly established at the time an action occurred," because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015); *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992).

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether the plaintiff has alleged any violation of a clearly established right, and if so, whether the individual defendant's conduct was objectively reasonable. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Duckett v. City of Cedar Park*, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, the court should not assume that the plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. *Siegert*, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by the plaintiff are true, a violation has clearly occurred. *Connelly v. Comptroller*, 876 F.2d 1209, 1212 (5th Cir. 1989). Even if defendants are alleged to have acted in unison, the court must address the actions of each individually to determine whether qualified immunity applies. *Cass v. City of Abilene*, 814 F.3d 721, 730-31 (5th Cir. 2016); *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

A mistake in judgment does not cause an officer to lose his qualified immunity defense. In *Hunter*, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley*, [475 U.S.] at 343. . . . This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued.

502 U.S. at 229. "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341. Further, that the officer himself may have created the situation does not change the analysis. That he could have handled the situation better does not affect his entitlement to qualified immunity. *Young v. City of Killeen*, 775 F.2d 1349, 1352-53 (5th Cir. 1985).

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. *Kovacic v. Villareal*, 628 F.3d 209, 211-12 (5th Cir. 2010); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994). The standard is demanding. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. *White v. Pauly*, 580 U.S. 73, 79 (2017). That is, the clearly established law upon which the plaintiff relies should not be defined at a high level of generality but must be particularized to the facts of the case. *Id.* Thus, failure to identify a case where an officer acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. *Id.* at 79–80; *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017).

### C.  Deliberate Indifference

The Eighth Amendment proscribes cruel and unusual punishments, which the Supreme

Court has interpreted to include deliberate indifference to serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). For deliberate indifference to rise to the level of a constitutional violation, the plaintiff must establish that the defendant knew of and disregarded an excessive risk to the plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* A defendant's "failure to alleviate a significant risk that he should have perceived but did not" does not constitute a constitutional violation. *Id.* at 838. Deliberate indifference is an extremely high standard to meet. *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires the plaintiff to show that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino*, 239 F.3d at 756). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346.[3]

## III.  ANALYSIS

Plaintiff alleges that on February 20, 2024, he woke up at about 7:30 a.m. because his CPAP machine quit running. He asked the floor officer who had unplugged the CPAP and the officer said that because Dr. Bishop had problems with another inmate, Dr. Bishop "took it out" on Plaintiff. ECF No. 1 at 9.[4] He refers to Exhibit A to the complaint, the top portion of an offender

---

[3] The cases cited by *Gobert* do not explain what such exceptional circumstances might be. Whether to provide additional treatment is a classic example of a matter for medical judgment. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Domino*, 239 F.3d at 756.

[4] The page references to the complaint are to "Page __ of 34" reflected at the top right portion of the document on the

medical pass dated March 17, 2020, as proof that Dr. Bishop knew of Plaintiff's need to use the CPAP machine. *Id.* at 15. The pass simply says that Plaintiff "[m]ay use the machine as needed for shortness of breath." *Id.* He apparently contends that the unplugging of the CPAP machine constituted wanton disregard for his serious medical needs. He does not, however, allege any facts to support that he was harmed as a result as a result of the CPAP being unplugged.

As Dr. Bishop notes, Plaintiff does not allege any facts to show that Dr. Bishop had personal knowledge of a serious medical need of Plaintiff's. The allegations regarding the unplugging of the CPAP are wholly conclusory and implausible. *See Nixon v. Goldman Sachs Mortg. Corp.*, No. 3:13-CV-121-K, 2013 WL 3324216, at *4 (N.D. Tex. June 28, 2013) (conclusory, nonsensical allegations fail to state a plausible claim). Moreover, even had Plaintiff alleged facts to show that Dr. Bishop was responsible for the unplugging of the machine, he does not allege any injuries as a result. Mere delay or interruption in use of a CPAP machine does not constitute deliberate indifference. *White v. Lycoming Cnty. Prison*, No. 1:21-CV-00781, 2023 WL 4865985, at *6 (M.D. Pa. July 31, 2023); *Kreis v. Northampton Cnty. Prison*, No. 21-CV-2360, 2022 WL 4236692, at *10 (E.D. Pa. Sept. 14, 2022). Even a lengthy delay in obtaining a CPAP machine does not constitute deliberate indifference if it does not result in substantial harm. *Lavergne v. Lavespere*, No. 21-344-JWD-RLB, 2024 WL 2883518, at *5 (M.D. La. Apr. 17, 2024), *report and recommendation adopted*, 2024 WL 2106177 (M.D. La. May 9, 2024).

With regard to his fall, Plaintiff alleges: On February 24, 2024, he tripped on his shower shoe and fell forward, hitting his face, left upper chest, and left shoulder on the toilet and his right knee on the floor. ECF No. 1 at 10. The next day, Defendant Zeorgetta told Plaintiff that she had

---

Court's electronic filing system and are used because additional pages have been attached to the form.

not yet reported his injuries to Dr. Bishop. *Id.* at 11. On the following day, February 26, she told Plaintiff that Dr. Bishop would not give him any pain medication until he examined Plaintiff and that Dr. Bishop would not come for two weeks. On February 27, Plaintiff was told that Dr. Bishop would see him on March 6. On March 8, he was taken for x-rays. *Id.* On March 13, Plaintiff asked to see Dr. Bishop but the officers he spoke to refused to tell Defendant Rachel about his request. A week later, Dr. Bishop saw Plaintiff and told him that the x-ray showed that "it was arthritis." Dr. Bishop could not answer why there was no knot before Plaintiff fell. When Plaintiff got back to the Beto Unit of the Texas Department of Corrections, new x-rays showed that his collar bone had been broken and that to repair it, the bone would have to be re-broken. *Id.* at 12.

As Dr. Bishop points out, Plaintiff has not alleged any facts to show that Dr. Bishop had actual knowledge of any serious medical need of Plaintiff arising from the fall. In fact, he has not alleged any facts to show when Dr. Bishop learned that Plaintiff had even fallen. Plaintiff has not alleged that Dr. Bishop refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in conduct evincing a wanton disregard for any serious medical needs. *See Domino*, 239 F.3d at 756. Rather, he seems to be complaining that, without seeing him, Dr. Bishop refused to provide narcotics. A dispute with treatment provided does not raise a constitutional issue. *Id*. In addition, Plaintiff, relying on x-rays taken approximately two months later, appears to contend that Dr. Bishop misdiagnosed his condition as arthritis. The first x-ray report reflects that there might have been a "[p]ossible nondisplaced facture of the distal clavicle." ECF No. 1 at 17. The report also reflects an impression of osteoarthrosis and compatible rotator cuff pathology. *Id.* An x-ray a month later reflects that Plaintiff complained of left shoulder pain and the findings indicated moderate osteoarthrosis. *Id.* at 19. But, even assuming Dr. Bishop misdiagnosed

8

Plaintiff's condition, misdiagnosis does not amount to deliberate indifference. *Domino*, 239 F.3d at 756.

In sum, Plaintiff has not pleaded facts to show that Dr. Bishop violated a federal statutory or constitutional right and that the unlawfulness of Dr. Bishop's conduct was clearly established at the time. *Garza v. Briones*, 943 F.3d 740, 744 (5th Cir. 2019). Thus, Plaintiff has not met his burden of showing that Dr. Bishop is not entitled to qualified immunity.

## IV.   CONCLUSION

For the reasons discussed, Dr. Bishop's motion to dismiss is **GRANTED** and Plaintiff's claims against him are **DISMISSED**. The Court determines that there is no just reason for delay in, and hereby, **DIRECTS**, entry of final judgment as to the dismissal of the claims against Dr. Bishop.

**SO ORDERED** this **21st** day of **November, 2024**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**